IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LARRY BURTON,

        Petitioner,

   v.

TABB BICKELL, et al.,

        Respondents.

CIVIL ACTION
NO. 13-4533

**OPINION**

**Slomsky, J.**                                                                                                    **November 17, 2015**

## I.    INTRODUCTION AND BACKGROUND

Before the Court is the pro se Petition for Writ of Habeas Corpus of Larry Burton ("Petitioner"), a state prisoner, pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) On November 10, 2014, United States Magistrate Judge David R. Strawbridge issued a Report and Recommendation ("the Report"), recommending that the Petition be denied and that a certificate of appealability not be issued. (Doc. No. 21.) On January 15, 2015, Petitioner filed Objections to the Report. (Doc. No. 24.) The Court has reviewed all pertinent documents, and for reasons that follow, will approve and adopt the Report (Doc. No. 21) and deny the Petition (Doc. No. 1) with prejudice.[1]

The following factual account is taken from the Report:[2]

---

[1] For purposes of this Opinion, the Court has considered the pro se Petition for Writ of Habeas Corpus (Doc. No. 1), the Government's Response to the Petition for Writ of Habeas Corpus (Doc. No. 20), the Report and Recommendation of United States Magistrate Judge David R. Strawbridge (Doc. No. 21), and Petitioner's Objections to the Report (Doc. No. 24).

[2] The factual background in the Report was based upon the pro se Petition for Writ of Habeas Corpus and its supporting brief, with appended exhibits (Doc. No. 1); the Response to the

Burton's conviction relates to his involvement in a fatal shooting outside a Philadelphia high school on October 26, 1999. On that day, Burton and his cousin, co-defendant Keyen Hill ("Hill"), were discovered in a hallway at Martin Luther King High School, where Burton's sister was a student. After being escorted outside by a school officer, they remained in the vicinity, awaiting the school dismissal. They then approached 16-year-old Donald McNeil ("McNeil") as he was leaving the school, and Burton confronted him with the accusation that McNeil had punched or slapped his sister. McNeil expressed confusion as to whom he was alleged to have assaulted,[3] told Burton to "get out of [his] face" or "get the f--- out of here," and turned to walk away. Burton drew a Tech 9 submachine gun and shot McNeil twice in the back and once in the buttock. Burton and Hill then fled in a car parked nearby. Police pursued the vehicle until it stopped and the occupants got out and ran. Following a foot chase, police apprehended Burton and Hill. The murder weapon was discovered along the route where the men were being pursued.

Burton was charged with capital murder. He waived his right to a jury trial. At trial, his counsel argued that the killing was committed in the heat of passion following provocation and that Burton had no specific intent to kill. The court did not accept this proposition and found him guilty on June 27, 2000 of first-degree murder, recklessly endangering another person, and related firearms offenses. The matter proceeded to the penalty phase on the capital murder charge, where the court found that the mitigating factors outweighed the aggravating factors. Accordingly, the court sentenced Burton to the mandatory minimum term of life imprisonment for the murder and imposed additional sentences, to run concurrently, for the related charges. The Pennsylvania Superior Court affirmed the trial court's judgment on September 12, 2003. After Burton successfully petitioned in 2004 to have his direct appeal rights reinstated, he filed a petition for allowance of appeal in the Pennsylvania Supreme Court. On April 11, 2006, however, the court denied his petition.

Burton sought further relief from his conviction with a *pro se* petition for collateral review filed on or about September 20, 2006 pursuant to the Post Conviction Relief Act, 42 Pa. Cons. Stat. § 9541, *et seq.* ("PRCA"). Counsel was appointed but on June 15, 2009 filed a "no merit" letter and sought to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988). The PCRA Court denied the PCRA petition on July 20, 2009 and relieved counsel of the representation. Burton pursued an

---

petition filed by the Philadelphia District Attorney's Office on June 16, 2014, with appended exhibits (Doc. No. 20); and the state court record.

[3] Footnote 3 of the Report states: "Burton's sister later confessed that she fabricated her account of an assault by McNeil."

appeal *pro se*. The Superior Court affirmed the PCRA Court's denial. The Pennsylvania Supreme Court denied Burton's petition for allowance of appeal.

(Doc. No. 21 at 2-4 (internal quotations omitted).)

On July 23, 2013, Petitioner initiated the present action by filing a pro se Petition for a Writ of Habeas Corpus pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254. (Doc. No. 1.) On August 19, 2013, the Court referred the case to U.S. Magistrate Judge David R. Strawbridge for a Report and Recommendation. (Doc. No. 2.) Respondents subsequently filed a Response in Opposition. (Doc. No. 20.)

On November 10, 2014, Magistrate Judge Strawbridge issued his Report, recommending that Petitioner's claims for relief be denied and that a certificate of appealability should not be issued. (Doc. No. 21.) On January 15, 2015, Petitioner filed Objections to the Report. (Doc. No. 24.) Petitioner's Objections to the Report are now before the Court for review. For reasons that follow, the Court will deny Petitioner's Objections and will adopt and approve the Magistrate Judge's Report and Recommendation.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B) and local rules of court, a district judge may designate a magistrate judge to file proposed findings and recommendations in regard to a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. "Within fourteen days after being served with a copy [of the magistrate judge's report], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." 28 U.S.C. § 636(b)(1). E.D. Pa. Local Civil Rule 72.1.IV(b) requires an objecting party to "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." With respect to pro se litigants, however,

this rule may be relaxed.  See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as an objection).

The district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  [The] judge . . . may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1); Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper."  Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).  The Third Circuit has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).

**III.   ANALYSIS**

In his Habeas Petition, Petitioner sought relief on the grounds that his Sixth and Fourteenth Amendment Rights were violated because he received ineffective assistance of counsel.  He raised three claims, alleging that his attorney: (1) coerced him to waive his right to testify on his own behalf; (2) failed to pursue a defense of imperfect self-defense; and (3) coerced him to waive his right to a jury trial.  (Doc. No. 1 at 5, 7, 9.)  In recommending that Petitioner's Habeas Petition be denied, the Magistrate Judge found that all three claims lacked merit and were reasonably rejected by the state court.  (Doc. No. 21 at 4.)

Because Petitioner challenges his conviction on the grounds of ineffective assistance of counsel, the Court will briefly describe the standard for claims of ineffective assistance of counsel.  The Court will then address each of Petitioner's three Objections.

4

### A. *Strickland* Prejudice Standard

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate the following: 1) counsel's representation was objectively unreasonable; and 2) but for counsel's deficient representation, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668 (1984). The Magistrate Judge further explained the Strickland standard as follows:

> In examining counsel's performance, the court must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable, professional assistance. *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689). This analysis requires the court to "take a highly deferential look at counsel's performance." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (citing *Strickland*, 466 U.S. at 689). With respect to the prejudice prong, the petitioner must demonstrate the likelihood of a different outcome by "a probability sufficient to undermine confidence in the outcome." *Harrington*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694). "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.'" Rather, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Harrington*, 131 S. Ct. at 787-88 (quoting *Strickland*, 466 U.S. at 687).
>
> When the state court has addressed an ineffectiveness claim on the merits, our analysis must also be guided by the deferential standard of review provided for in § 2254(d). As the *Strickland* standard is a "general standard," and the Supreme Court recognizes that a state court "has even more latitude to reasonably determine that a defendant has not satisfied that standard," our review of a state court decision on the merits of an ineffectiveness claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Thus, the question that must be answered in the context of review of a *Strickland* claim rejected by the state court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.

(Doc. No. 21 at 6.)

### A. Petitioner's Objections

#### 1. Petitioner's First Objection is Without Merit Because He Voluntarily Chose Not to Testify

Petitioner first objects to the Magistrate Judge's determination that Petitioner voluntarily chose not to testify. (Doc. No. 24 at 4.) Petitioner argues that the Superior Court's decision—

with which the Magistrate Judge agreed—was based on an unreasonable determination of the facts, because even though Petitioner indicated it was his decision not to testify, "this decision was based solely on trial counsel's advice." (Doc. No. 24 at 4.)

The Magistrate Judge thoroughly reviewed Petitioner's argument, as well as the reasoning of the PCRA court and the Superior Court. The Magistrate Judge also reviewed an affidavit in which Petitioner swore that, had he testified, he would have explained that his mother had asked him to "pull [his] little sister Nicole out of school and make sure she was alright because she had gotten beat up," thereby explaining why he approached McNeil at the school. (Doc. No. 1-2 at 2.) The Magistrate Judge also reviewed the colloquy in which Petitioner waived his right to testify.[4] The Magistrate Judge concluded that "[i]t was reasonable for the Superior

---

[4] The colloquy is reproduced below:

> **MR. MCMONAGLE:** YOU ALSO UNDERSTAND THAT YOU HAVE AN ABSOLUTE RIGHT TO TESTIFY; IS THAT CORRECT?
> **DEFENDANT BURTON:** YES.
>
> **MR. MCMONAGLE:** NOBODY CAN COMPEL YOU TO TESTIFY AND IT IS YOUR CHOICE WHETHER OR NOT TO TESTIFY DURING THIS TRIAL; DO YOU UNDERSTAND THAT?
> **DEFENDANT BURTON:** YES.
>
> **MR. MCMONAGLE:** IS IT YOUR CHOICE TO TESTIFY DURING THIS TRIAL?
> **DEFENDANT BURTON:** NO.
>
> **MR. MCMONAGLE:** HAVE YOU CONSULTED WITH ME CONCERNING THAT PARTICULAR ISSUE?
> **DEFENDANT BURTON:** YES.
>
> **MR. MCMONAGLE:** ARE YOU SATISFIED THAT WE HAVE DISCUSSED THAT ISSUE AND ARE YOU SATISFIED WITH THE ADVICE THAT I HAVE GIVEN YOU ON THAT SUBJECT?
> **DEFENDANT BURTON:** YES.

Court to conclude that counsel was operating within the wide range of reasonable, professional assistance when he recommended to Burton that he not testify." (Doc. No. 21 at 10.) Furthermore, the Magistrate Judge agreed with the Superior Court that, had Petitioner testified, there was no reasonable probability that his testimony as described in his affidavit would have changed the result of the trial. (Id.)

The Court agrees that Petitioner voluntarily chose not to testify, and, even if he had testified, there is no reasonable probability of a different outcome. Therefore, the Court approves and adopts the Magistrate Judge's recommendation that Petitioner's first claim be denied.

### 2. Petitioner's Second Objection is Without Merit Because the Evidence Could Not Have Supported an "Imperfect Self-Defense" Defense

Petitioner next objects to the Magistrate Judge's findings regarding his claim of ineffective assistance for failure to pursue an "imperfect self-defense" defense. (Doc. No. 24 at 5.) Petitioner contends that the Magistrate Judge's determination was based on an unreasonable determination of the facts. (Id.) He argues that his testimony, along with the testimony of two witnesses, would have been enough to assert a defense of imperfect self-defense. According to Petitioner:

> This evidence coupled with Petitioner's witnesses "Jefferson" and "Drayton" was more than enough to mount a defense that trial counsel was ineffective for not asserting. There is reasonable probability that the three defense witnesses combined would have gave [sic] hope to a defense of imperfect self-defense. This

---

**MR. MCMONAGLE:** TODAY, ARE YOU UNDER THE INFLUENCE OF ANY DRUGS OR ALCOHOL?
**DEFENDANT BURTON:** NO.

**MR. MCMONAGLE:** DO YOU KNOW OF ANYTHING THAT WOULD PREVENT YOU FROM MAKING THIS VOLUNTARY CHOICE WHETHER TO TESTIFY OR NOT?
**DEFENDANT BURTON:** NO.

(Doc. No. 21 at 8-9.)

7

>  evidence combined gave chance to a realistic probability that a different outcome would have occured. [sic]

(Doc. No. 24 at 6.)

The Magistrate Judge described the law surrounding the "imperfect self-defense" defense—also referred to as the "unreasonable belief" theory—as follows:

>  In Pennsylvania, a defendant charged with homicide may be convicted of voluntary manslaughter under an "unreasonable belief" theory if the evidence demonstrates that the defendant believed that circumstances existed to justify the killing, although his belief as to the existence of those circumstances is, in fact, unreasonable. In order to establish the requisite justification, the defendant would have to show that he believed that deadly force was required to save his life or avoid serious bodily injury, that he was free from fault in provoking the difficulty, and that he did not violate any duty to retreat.

(Doc. No. 21 at 11 (internal citations omitted).) In his Habeas Petition, Petitioner argued that he would have provided support for this defense had he testified, and that the state courts unreasonably adjudicated this claim by not taking into account the affidavits of witnesses Jefferson and Drayton. (Doc. No. 1-1 at 13.)

Upon review of the state court decision and record, the Magistrate Judge concluded that the evidence at trial did not support a defense of imperfect self-defense, and Petitioner's testimony would not have been reasonably likely to support it. The Magistrate Judge cited Petitioner's affidavit in noting that Petitioner himself had provoked the altercation. (Doc. No. 21 at 12.) The evidence at trial established that McNeil walked away and attempted to flee when Petitioner drew his gun. (Doc. No. 21 at 12.) Therefore, the Magistrate Judge determined that the statements of witnesses Jefferson and Drayton would not have aided an imperfect self-defense defense because their statements were "wholly inconsistent with the defense . . . inasmuch as they state that it was the cousin, Keyen Hill, not Burton, who pulled out the gun and shot McNeil." (Id.)

The Court agrees with the Magistrate Judge that the facts in the record do not support a defense of imperfect self-defense. Even if Petitioner had testified—and even if witnesses Jefferson and Dreyton had testified—there is no reasonable probability that such testimony would have supported a finding that Petitioner shot McNeil with the belief that it was necessary for Petitioner's own self-defense.

Because there can be no ineffective assistance of counsel where counsel failed to raise a meritless claim, the Court agrees with the Magistrate Judge and with the Superior Court that there was no Sixth Amendment violation as to this claim. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000) (noting that "counsel cannot be deemed ineffective for failing to raise a meritless claim.").

### 3. Petitioner's Third Objection is Without Merit Because Petitioner Was Not Prejudiced By His Waiver of a Jury Trial

In his final Objection, Petitioner claims he "was prejudiced because had it not been for counsel's unreasonable advice Petitioner would have elected not to waive his right to a trial by jury." (Doc. No. 24 at 6.) In support of this Objection, Petitioner argues that the record shows that counsel gave Petitioner unreasonable advice. He points to two instances where this occurred: (1) "Albeit under the definition of voluntary manslaughter, trial counsel did ask the judge to find Petitioner guilty of third degree murder,"[5] and (2) "the discussion between Petitioner and counsel regarding the jury waiver." (Doc. No. 24 at 6.) Petitioner requests that

---

[5] This part of the Objection is difficult to understand. Petitioner appears to object to trial counsel's failure to pursue the imperfect self-defense defense, which would argue in favor of a conviction for voluntary manslaughter rather than third-degree murder. In this portion of the Objection, Petitioner cites to a section of the trial transcript in which counsel asks the judge to find Petitioner guilty of third degree murder. (N.T. 06/22/00 at 15-16, 56-58, 60, 63.) Because the Court discussed counsel's failure to pursue an imperfect self-defense defense above, it will not repeat the discussion here.

9

the Court either not adopt the Magistrate Judge's findings as to this claim or remand the matter to the Magistrate Judge for an evidentiary hearing.

The Magistrate Judge noted that the trial court conducted a ten-page colloquy before it accepted Petitioner's waiver of a jury trial. "During that colloquy, the trial court discussed what a jury trial is, what a bench trial is, what that meant with regards to a verdict, what the charges were, and what the maximum sentences were." (Doc. No. 21 at 14.) The following excerpt from the trial transcript illustrates the voluntariness with which Petitioner waived his right:

> **THE COURT:** MR. BURTON, UNDERSTANDING THE MAXIMUM POSSIBLE SENTENCES AND FINES THAT YOU ARE EXPOSED TO, DO YOU STILL WISH TO GIVE UP YOUR RIGHT TO A JURY TRIAL?
> **DEFENDANT BURTON:** YES.
>
> **THE COURT:** HAVE ANY THREATS OR PROMISES BEEN MADE TO YOU TO GET YOU TO GIVE UP YOUR RIGHT TO A JURY TRIAL?
> **DEFENDANT BURTON:** NO.
>
> **THE COURT:** ARE YOU DOING SO OF YOUR OWN FREE WILL?
> **DEFENDANT BURTON:** YES.
>
> **THE COURT:** HAVE YOU DISCUSSED THIS DECISION WITH YOUR LAWYER?
> **DEFENDANT BURTON:** YES, I HAVE.
>
> **THE COURT:** ARE YOU SATISFIED WITH HIS REPRESENTATION OF YOU UP TO THIS POINT?
> **DEFENDANT BURTON:** YES.
>
> **THE COURT:** I HAVE IN MY POSSESSION A WAIVER OF JURY TRIAL FORM SIGNED BY MR. BURTON, HIS ATTORNEY AND THE DISTRICT ATTORNEY. IS THAT YOUR SIGNATURE ON THE FORM, MR. BURTON?
> **DEFENDANT BURTON:** YES.
>
> **THE COURT:** AND HAS YOUR ATTORNEY GONE OVER THAT WITH YOU, SIR?
> **DEFENDANT BURTON:** YES.

In ruling on Petitioner's PCRA appeal, the Superior Court "noted that to accept his argument on appeal 'would necessarily mean that he had lied at the time of his waiver colloquy,'

and that its precedents do not permit a petitioner to 'obtain post-conviction relief by claiming that he lied during his waiver colloquy.'" (Doc. No. 21 at 15 (quoting Commonwealth v. Burton, No. 2440 EDA 2009, slip op. at 6-7 (Pa. Super. Ct. July 17, 2012).)

The Court agrees with the Magistrate Judge's conclusion that the Court must presume that Petitioner's statement in court was true and that he was not promised anything in exchange for waiving a jury trial. Because there is an absence of evidence indicating improper coercion by Petitioner's attorney, such a conclusory allegation cannot support a finding of deficient performance by counsel. See Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010) ("We have repeatedly emphasized that 'bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing' on a habeas petition.").

The Magistrate Judge further noted that Petitioner had not alleged that the judge was biased or that the trial was conducted in an unfair manner. Therefore, he did not show a reasonable probability that the outcome of the trial would have been different had he not waived the right to a jury trial. Because Petitioner made no showing that the outcome would have been different had a jury decided his case, he was not prejudiced by his waiver. Likewise, Petitioner does not contend in his Objections that the trial was conducted unfairly. He simply claims that had trial counsel not given him "unreasonable advice," he would not have elected to waive his right to a jury. (Doc. No. 24 at 6.) The Court agrees with the Magistrate Judge that Petitioner was not coerced, and even if he had not waived his right to a jury trial, there is no reasonable probability of a different outcome.

## IV. CONCLUSION

For the aforementioned reasons, the Court will deny Petitioner's objections and instead will approve and adopt the Magistrate Judge's Report and Recommendation, denying Petitioner's claims for relief. An appropriate Order follows.